UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| MARSHA K. BOYANOWSKI, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CIVIL NO. 1:14cv295 |
|  | ) |  |
| CAROLYN W. COLVIN, Acting | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits, 42 U.S.C. § 401 *et seq*. Section 205(g) of the Act provides, *inter alia*, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2009.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 31, 2008 through her date last insured of June 30, 2009 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: obesity; fibromyalgia; obstructive sleep apnea; headaches; and diabetes (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) , 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant cannot lift more than 15 pounds and she can only occasionally climb, balance, stoop, kneel, crouch, and crawl.

6. Through the date last insured, the claimant was capable of performing past relevant work as a deaf interpreter. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 31, 2008, the alleged onset date, through June 30, 2009, the date last insured (20 CFR 404.1520(f)).

(Tr. 19-25)

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on April 28, 2015. On August 4, 2015, the defendant filed a memorandum in support of the Commissioner's decision, and on August 18, 2015, Plaintiff filed her reply. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287,

2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step four was the determinative inquiry.

Plaintiff filed an application for Disability Insurance Benefits (DIB) on March 19, 2009, and originally alleged disability since January 1, 2004 (Tr. 135). The claim was denied initially and upon reconsideration. On July 19, 2010, ALJ John Pope convened a hearing at which Plaintiff amended her alleged onset date to May 31, 2008 (Tr. 1094). On November 19, 2010, ALJ Pope issued a decision finding that Plaintiff was not disabled (Tr. 1097). On March 2, 2012, the Appeals Council affirmed Judge Pope's finding that Plaintiff was not disabled (Tr. 1). Plaintiff sought timely review of the Commissioner's decision, and on July 3, 2013, this Court remanded the matter to the Agency for further consideration (Tr. 1140).

Meanwhile, as the first claim was pending upon appeal, Plaintiff applied again for Title II disability benefits on March 12, 2012, and this claim was denied initially and upon reconsideration (Tr. 1016). On August 29, 2013, Administrative Law Judge Steven Neary found

that Plaintiff was not disabled during the period encompassed by this second claim, and further noted that because of Plaintiff's continued work activity, her date last insured advanced to June 30, 2012 (Tr. 168). ALJ Neary's decision encompassed the period from November 20, 2010, the day after ALJ Pope's decision, through August 29, 2013, the day of ALJ Neary's decision.

On September 16, 2013, upon receipt of the District Court remand order of the first claim at issue, the Appeals Council remanded that claim to ALJ William Pierson. The Appeals Council further noted that the ALJ could consider ALJ Neary's decision concerning the second claim consistent with applicable reopening regulations when deciding the remanded first claim (Tr. 1187). The ALJ exercised his discretion to reopen the second claim. Thus, the ALJ's decision at issue before this Court encompasses the period first adjudicated by ALJ Pope and the period adjudicated by ALJ Neary.

Plaintiff appeared with counsel before the ALJ at a hearing on January 14, 2014 (Tr. 1038). On May 27, 2014, the ALJ applied the sequential five-step analysis and found that Plaintiff was not disabled (Tr. 1012-1030). The Appeals Council did not review the ALJ's decision within 60 days of the ALJ's decision, making the ALJ's decision the Commissioner's final decision (Tr. 1013). Plaintiff timely filed this civil action, pursuant to 42 U.S.C. § 405(g), for review of the agency's decision.

Plaintiff was 44 years old as of the alleged onset date. Plaintiff is a high school graduate with four years of college and training as a deaf interpreter. In the 15 year look back period, Plaintiff worked as an interpreter for the deaf. The exertional level of this job qualified as light and its skill level was semi-skilled.

Plaintiff suffers from gastrointestinal and urinary system problems. She has been

diagnosed with pseudomembranous trigonitis, inflammatory pseudopolyps of the bladder neck and proximal urethra, gout, recurrent kidney stones, vesicoureteral reflux, recurrent pyelonephritis, urethral cysts,and frequent and/or chronic urinary tract infections. Over the years, she has been treated with medications, and she has endured multiple cystoscopies and uteroscopies, a urethral cystectomy, and multiple ureteral stent placements and removals. Plaintiff has also been treated for irritable bowel syndrome, gastrointestinal bleeding, diverticulosis, and recurrent diverticulitis.

On August 5, 2006, Plaintiff was hospitalized with pyelonephritis. By early 2009, her physician prescribed Allopurinol for hyperuricemia (gout). On July 3, 2009, her urologist noted voiding difficulty. On August 30, 2008, A CT scan revealed scattered colonic diverticulosis. On September 25, 2008, a colonoscopy confirmed the CT scan results. Diverticula are small pouches in the lining of the colon that bulge outward through weak spots. A single pouch is called a diverticulum. The condition of having diverticula is called diverticulosis. Diverticulitis consists of inflammation of a diverticulum, which can result in phlegmon of the bowel wall, peritonitis, perforation, fistula, or abscess. In the midst of two episodes of diverticulitis, Plaintiff experienced painful urinary tract infections due to a colonic fistula that had invaded her urinary system. On August 28, 2009, Plaintiff underwent a cystoscopy which revealed inflammatory change of bladder and a possible colovesical fistula.

Plaintiff's diverticulitis, chronic urinary tract infections, and other accompanying problems had become so bad that on January 13, 2010, she underwent several procedures and surgeries: an exploratory cystoscopy, a complex placement of bilateral ureteral catheters, a sigmoid colectomy, and a small bowel resection to repair a mesenteric hematoma. In relation to

the sigmoid colectomy, her surgeon initially pursued a laparoscopic surgical approach; however, due to the complex nature of her colon's interaction with the ureter, the laparoscopic instruments were withdrawn and the surgery was converted to the more invasive open approach. The postoperative diagnoses were: recurrent diverticulitis and colovesical fistula.

Plaintiff indicated that she continued to suffer from kidney stones and from twice weekly bouts of kidney swelling and pain, which she addressed by lying in bed with a heating pad. She further indicated that she experienced about three to four urinary tract infections a year, each of which lasted about "three or four days before the medicine kicks in."

On May 6, 2011, Plaintiff was back in the operating room to address problems relating to renal colic, sepsis, stones, and removal of a ureteral stent, thereby objectively confirming that her medical situation had not resolved.

Because of her multiple medical impairments and for reasons not entirely understood, Plaintiff has been suffering from long-term chronic pain. Early on, the pain condition was diagnosed as myofascial pain. Later, her condition was thought to be fibromyalgia. After the critical round of surgeries on January 10, 2010, her physicians settled upon the diagnosis of chronic regional pain syndrome. Her physicians have tried numerous medications to address her pain issues, including Vicodin, Neurontin, Lyrica, and Zanaflex. Plaintiff experienced drowsiness side effects with both Lyrica and Neurontin.

Plaintiff underwent multiple pelvic surgeries or treatments, including three caesarian sections, a bilateral tubal ligation, an aspiration and cautery of a right ovarian cyst, Lupron therapy for endometriosis, a total abdominal hysterectomy, and a bilateral salpingo-oophorectomy for chronic pain and adhesions.

Plaintiff suffers from migraine headaches. For several years, Topamax was her primary migraine medication; however, it was discontinued because of concerns related to side effects. Maxalt then became her main migraine medication. Plaintiff reported that Maxalt is only partially effective and that she suffered from a couple of migraine headaches a week. A neurologist warned about the use of prophylactic migraine headache medications because of her elevated hepatic transaminases. Plaintiff has incurred liver damage and elevated liver enzymes have been an ongoing concern of her physicians. Some of her symptoms included sonophobia and photosensitivity and she testified that loud noises and bright lights bothered her.

Plaintiff has been diagnosed with Metabolic Syndrome, which is the name given to a group of risk factors that occur together and increase the risk for coronary artery disease, stroke, and Type II Diabetes. She has had Diabetes Mellitus since approximately 2007. This condition has been treated with Avandamet. Plaintiff has been diagnosed with hypertension that has been treated variously with Lisinopril and Verapamil. She also has hyperlipidemia with marked hypertriglyceridemia that has been treated variously with Trilipix; Crestor, Tricor, Welchol, Zetia, and Niaspan.

Plaintiff also suffers from long-term gout which has primarily been treated with Allopurinol. Additionally, Plaintiff has suffered from edema that has been treated variously with Lasix and Indapamide. Her hands, ankles, and feet swell a couple of times a month. She is obese at 5'5" and 254 pounds.

On April 15, 2005, Pulmonologist Thomandram Sekar, M.D. diagnosed Plaintiff with severe obstructive sleep apnea syndrome and excessive daytime somnolence and prescribed a nasal CPAP. A nocturnal polysomnogram and a CPAP Titration Sleep Study supported the

diagnoses.

Plaintiff also has balance issues described as positional vertigo and intermittent dizziness, and her physicians have noted that her hands shake and have described it as essential tremor. Her hands trembled at the hearing. Dr. Bacchus, a consultative examiner, confirmed that she required a cane and that the use of the cane was medically necessary.

Additionally, Plaintiff had ganglion cysts removed from both wrists. Her lumbar spine exhibited mild curvature, concave to the right, with slight decreased disc height and mild spondylosis at L5-S1. She also suffered from mild cervical spondylosis.

In support of remand or reversal, Plaintiff first argues that the ALJ erred by not incorporating the limiting effects related to urinary system problems, gastrointestinal problems, other severe and non-severe impairments, and the combination thereof, into the RFC analysis.

An ALJ must evaluate all relevant evidence when determining an applicant's RFC, including evidence of impairments that are not severe. 20 C.F.R. § 404.1545(a). Moreover, an ALJ may not ignore entire lines of evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001); *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir.2008). In explaining why in assessing RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" SSR 96-8p explains:

> While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.

SSR 96-8p, 1996 WL374184 at *5.

Plaintiff argues that the migraine headaches support limitations in relation to bright lights

9

and loud noises but that no such limitations are contained in the RFC. Plaintiff contends that the migraine headaches generated symptoms that exceeded the tolerance for absenteeism and breaks.

Plaintiff also argues that she has fatigue issues due to her sleep apnea, hypertension, diabetes and gout, and that she often needs to nap. Plaintiff claims that the ALJ's failure to include her need for rest breaks beyond employer tolerances in the RFC requires remand. Also, Plaintiff argues that the ALJ failed to consider the gastrointestinal and urinary system problems in conjunction with each other, and that the limiting effects of these combined impairments were not included in the RFC.

In response, the Commissioner points out that the ALJ noted that there was an extensive record concerning Plaintiff's medical treatment history, but the medical records did not contain ongoing reports and findings concerning severe migraines or other medical impairments consistent with the limitations she reported (Tr. 1024). The ALJ noted that the medical records did not reflect either significant ongoing impairments or consistent uncontrollable side effects of medication (Tr. 1024).

The ALJ discussed Plaintiff's reported migraine headaches at length (Tr. 1024, 1027). The ALJ noted that Plaintiff had a negative head computed tomography scan in August 2006, and Plaintiff's headaches were "great" with medication in September 2006 (Tr. 1027, 282, 332). Plaintiff's headaches further improved with medication in June 2009 (Tr. 1027, 405). Plaintiff did not report significant headaches in 2008 or 2009, and reported having "some" headaches in May 2010, but also reported "doing a lot better" when taking Vyvance for them (Tr. 1027, 615). Plaintiff reported that taking Maxalt relieved her headache pain in August 2010 (Tr. 1027, 957). As the ALJ's decision reflects, he analyzed the relevant medical evidence and reasonably

determined that Plaintiff's migraines were not as debilitating as she claimed, and her own doctors noted that they could be treated with medication.

The ALJ further addressed Plaintiff's complaints about urinary and gastrointestinal difficulties (Tr. 1024-25, 1027-28). The ALJ analyzed Plaintiff's diverticulitis, and noted that radiographs revealed no acute diverticulosis; scattered colonic diverticulitis; and unremarkable liver, gallbladder, kidneys, and urinary bladder in August 2008 (Tr. 1027, 328). The ALJ noted that moderate diverticulosis was present per scope in September 2008 (Tr. 1027, 326), but was not mentioned again until September 2009, when Kelly Klinker, M.D., noted that Plaintiff had never been hospitalized for her diverticulitis and had never taken medications for colon disease, suggesting that Plaintiff's diverticulosis quickly resolved in 2008 (Tr. 1027, 573-74). Plaintiff had a small bowel resection for mesenteric bleeding in 2009, but was doing well by January 2010 (Tr. 1028, 579). The ALJ noted that the medical treatment records reflected ongoing observation, by treating physicians, that Plaintiff's gastrointestinal conditions were amenable to successful treatment by dietary restrictions and medication (Tr. 1027).

As for Plaintiff's urinary tract infections (UTIs), the ALJ noted that Dr. Anderson's notes from 2007 and 2008 did not reflect ongoing and frequent complaints of UTIs until October 2008, and then UTIs were not mentioned again thereafter in 2009 or 2010 (Tr. 1028, 267). Plaintiff's records from Parkview North Hospital records reflected a UTI in August 2008 (Tr. 1028, 447-48), but her records from Fort Wayne Urology did not reflect ongoing treatment for urinary issues until a right UTI was diagnosed in July and August 2009, accompanied by findings of an inflamed bladder (Tr. 1028, 530). At that time, the claimant reported having a UTI only two or three times a year, and had not had a UTI for the past six to eight months (Tr. 1028, 573-74).

11

The ALJ further noted that Plaintiff's medical treatment records did not document ongoing and frequent UTIs in 2010 or 2011 or ongoing complaints of frequent kidney stones in 2010 until kidney stones were noted in April 2011 (Tr. 1028). Plaintiff underwent stenting, and by May 2011 her stone was gone (Tr. 998-99). The ALJ noted that Plaintiff's medical treatment records from 2012 and 2013 did not document ongoing complaints of, or frequent treatment for, UTIs (Tr. 1028).

Plaintiff asks how the ALJ could find no additional restrictions from these impairments when she required surgery in May 2011 (Pl. Br. at 22-23). The ALJ acknowledged Plaintiff's uretral stenting in May 2011, but recognized that the stenting was successful in removing Plaintiff's uretral stone, and she did not require further medical attention for this problem (Tr. 1028, 998-99).

Plaintiff disagrees with the ALJ's RFC finding, but she does not point to any evidence concerning her migraines, gastrointestinal issues, or urinary issues that suggest she could not perform a restricted range of sedentary work. This court concludes that substantial evidence supports the ALJ's RFC finding.

Next, Plaintiff contends that the ALJ erred in failing to award at least a "period of disability". Disability benefits under the Social Security Act are not an "all or nothing" proposition. *Lovette v. Astrue*, 2008 WL 62507 *3 (W.D. Ark). A "claimant who is not entitled to continuing benefits may well be eligible to receive benefits for a specific period of time." *Id*. What is required for an award of temporary benefits is a claimant who meets the Act's definition of "disability" for a time lasting 12 months or longer, even if she later recovers sufficient health to return to full-time work on a long term basis. When considering whether a claimant has

experienced a "period of disability," the effects of all of the Plaintiff's impairments in combination must be considered. *See* 20 C.F.R. § 404.1523. And for benefits to be properly denied, the "individual must have some reasonable chance in the real world of being hired and, once hired, of keeping the job." *Wingo v. Bowen*, 852 F.2d 827,831 (5th Cir. 1988). She must be able to meet job demands "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Talbot v. Heckler*, 814 F.2d 1456, 1464 (10th Cir. 1987) citing *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc). And she must have sufficient RFC to do so "on a regular and continuing basis" of 40 hours per week or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

Plaintiff argues that, with her myriad impairments, it was impossible for the ALJ to have concluded that there was no 12-month period in which Plaintiff did not meet the definition of "disabled".

In response, the Commissioner points out that Plaintiff's argument is confusing and undeveloped because she does not identify a particular 12-month period when the medical and other evidence in the record would support a finding that she was unable to work. Plaintiff asks "on what plausible basis could the ALJ possibly have concluded there has been no period lasting 12 months or more in which she did not meet the definition of disability under the regulations?" (Pl. Br. at 24). Plaintiff's own argument begs the question of when this 12-month period would be. To be found disabled under the Act, Plaintiff bears the burden of showing that she has been unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

13

The ALJ reasonably concluded on this record that Plaintiff did not show any 12-month period of continual disability.

There is no question that the ALJ thoroughly addressed evidence from before Plaintiff's alleged onset date of May 31, 2008, and after her date last insured of June 30, 2012 (Tr. 1021-29). In assessing this evidence, the ALJ observed that Plaintiff presented regularly to her physicians, who noted that her conditions were traditionally stable and controllable with medication. *Id*. The ALJ further noted that Plaintiff did undergo various procedures, such as uretral stenting in May 2011, but she recovered from her procedures and treatments in less than 12 months (Tr. 1028). Thus, for the entirety of the period in question, the ALJ reasonably determined that Plaintiff remained able to perform work at a restricted range of sedentary work, and there were jobs that she could perform at that exertional level (Tr. 1020-21-1030).

The ALJ did not carve out any specific continuous 12-month period when Plaintiff could not work at this functional level and noted that separate short-term impairments could not be piggybacked together to make one 12-month period of impairment (Tr. 1028). On this record, Plaintiff cannot point to any continuous 12-month period for which substantial evidence does not support the ALJ's determination. Accordingly, the ALJ's determination will be affirmed.

Next, Plaintiff argues that the ALJ failed to adequately develop the record by not considering the medical evidence and hearing transcript already in the record of her March 12, 2012 application. However, as the Commissioner argues, it is clear that the ALJ properly reopened and decided the period previously adjudicated by ALJ Neary. The ALJ adjudicated Plaintiff's disability for the entire period from her alleged May 31, 2008 onset date to her June 30, 2012 date last insured. The ALJ did so by adjudicating the two time periods encompassed by two

14

separate claims that were pending before him. The first period before the ALJ ran from Plaintiff's May 31, 2008 alleged onset date through November 19, 2010, the date on which a prior ALJ denied Plaintiff's first claim for benefits (Tr. 1015). The second period before the ALJ was encompassed by Plaintiff's second claim for benefits, which ran from November 20, 2010 through her June 30, 2012 date last insured (Tr. 1016). The ALJ recognized the "complicated procedural history" of Plaintiff's two claims, but they were both before him and he properly decided the entire period.

As the ALJ explained, the period encompassed by Plaintiff's first claim was assigned to him on September 16, 2013, after a remand from this Court (and after the original administrative decision in this case had been issued by a different ALJ) (Tr. 1015-16, 1185). However, the period encompassed by Plaintiff's second claim was also referred to the ALJ by the Appeals Council; ALJ Neary had found that Plaintiff was not disabled for the period at issue in the second application, and she appealed that determination to the Appeals Council (Tr. 1185). The Appeals Council recognized that two separate but contiguous periods of disability were pending before it, one of which required further adjudication by an ALJ. In an exercise of judicial economy, the Appeals Council gave the ALJ hearing the first matter on remand the option of hearing the entirety of Plaintiff's pending claims (Tr. 1185). The ALJ expressly reopened the second claim (Tr. 1016), held a hearing on both claims without objection by Plaintiff (Tr. 1042-43), and issued a decision encompassing the periods at issue in both claims (Tr. 1015-16). As the ALJ decided the periods encompassed by both claims, they are both before this Court on judicial review.

Plaintiff appears troubled because the Appeals Council did not "order" the ALJ to reopen the period from the second claim, but instead stated that the ALJ would "consider that [second]

15

hearing decision if necessary, consistent with applicable reopening regulations, when deciding the [first] claim remanded by the court" (Pl. Br. at 26; Tr. 1187). Plaintiff believes that the Appeals Council did not relinquish jurisdiction over the decision concerning the second claim to benefits because it did not expressly state that it was vacating the second decision. Plaintiff overcomplicates this analysis. The Agency decision may be reopened within 12 months of the date of notice of the initial determination "for any reason." 20 C.F.R. § 404.988(a). Under this framework, the Appeals Council gave the ALJ the discretion to reopen ALJ Neary's denial of the second claim period, and the ALJ reasonably acted to do so and hear both matters at the same time.

Plaintiff also contends that the ALJ did not consider all of the evidence because he did not mention all of it in his decision (Pl. Br. at 27). This argument is unavailing, as the ALJ discussed admitting all of the prior evidence with Plaintiff's counsel at the January 14, 2014 hearing (Tr. 1044-45). Moreover, contrary to Plaintiff's assertions, the ALJ did discuss the evidence that she claims he did not consider. *See, e.g.*, Tr. 1021 (citing Plaintiff's testimony at July 3, 2013 hearing). The ALJ was not required to discuss every piece of evidence in this lengthy transcript, *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010), and there is no basis to believe that the ALJ did not consider all the evidence in this matter.

The ALJ acted within his discretion in reopening ALJ Neary's denial of Plaintiff's second claim for benefits as suggested by the Appeals Council. Plaintiff suffered no detriment from this action, and the ALJ's action resulted in one, rather than two, decisions concerning Plaintiff's request for disability benefits. Plaintiff cannot and does not identify any error in the ALJ proceeding in this manner.

Lastly, Plaintiff argues that the ALJ improperly weighed Dr. Bacchus' opinion. However, the record shows that the ALJ properly rejected the opinion of Dr. Bacchus. In his written report, Dr. Bacchus noted Plaintiff's self-reported history, and then observed her to be essentially normal under testing except for some trigger point tenderness, bilateral hip tenderness, a slightly antalgic and slow gait, cane use (although not always necessary for ambulation), some unsteadiness in heel/toe and tandem walk, an inability to hop, restricted squatting, some restricted range of motion, 4/5 strength on the left extremities and 5/5 strength on the right extremities, and 4/5 grip strength and slower fine finger manipulability (Tr. 1029, 1278-79). Based on his observations and Plaintiff's reported symptoms, Dr. Bacchus opined that Plaintiff could occasionally lift and carry up to 10 pounds; sit for two hours at one time and four hours total in an eight-hour workday; stand/walk for 30 minutes; required a cane; could occasionally climb stairs and ramps and balance but never climb ladders, ropes or scaffolds; and could never stoop, kneel, crouch or crawl (Tr. 1029, 1278-85). The ALJ gave little weight to Dr. Bacchus' opinion (Tr. 1029).

Plaintiff argues that the ALJ should have given greater weight to Dr. Bacchus' opinion (Pl. Br. at 28-30). Specifically, Plaintiff accuses the ALJ of "picking and choosing the portions of Dr. Bacchus' opinion that he considered, and should have adopted his opinion that Plaintiff was limited to 4 hours of sitting, 30 minutes of standing, and 30 minutes of walking in an 8-hour day," which would effectively preclude Plaintiff from performing any work (Pl. Br. at 29). However, the ALJ provided sufficient reasons for discounting this opinion.

The ALJ noted that Dr. Bacchus' November 2013 examination occurred well after Plaintiff's June 2013 date last insured, and that Dr. Bacchus had never observed Plaintiff prior to

her date last insured (Tr. 1022, 1029). An ALJ may correctly reject a retrospective opinion about functionality before a date last insured if it is not corroborated by evidence contemporaneous with the eligible period. *Estok v. Apfel*, 152 F.2d 636, 640 (7th Cir. 1998). In this case, Dr. Bacchus' own notes could not provide such corroboration, as he never examined Plaintiff before her date last insured, and he could only speculate on her condition during the relevant time based upon what Plaintiff reported to him.

Moreover, the ALJ thoroughly analyzed the treatment notes of Dr. Garlan Anderson and other physicians who observed Plaintiff from 2007 through 2010, and did not find support in them for Dr. Bacchus' extreme restrictions (Tr. 1023-26), nor does Plaintiff herself identify such support. In fact, the ALJ identified medical evidence rendered before Plaintiff's date last insured that did not support Dr. Bacchus' restrictive opinions. For example, on August 30, 2010, Ajay Gupta, M.D., examined Plaintiff for complaints of tremor, and found her sensation, strength and reflexes to be largely normal, and in no way consistent with a limitation that she could only sit for four hours in a day (Tr. 1026, 958). In the absence of corroborating evidence from before Plaintiff's date last insured, the ALJ reasonably rejected Dr. Bacchus' opinion of extreme limitations.

Plaintiff also accuses the ALJ of engaging in "backward analysis" because he assigned Dr. Bacchus' opinion "little weight . . . other than to the extent it suggested that the claimant could not do more than what is stated in the residual functional capacity above." (Pl. Br. at 30; Tr. 1029). Plaintiff's complaint is misplaced. The ALJ's decision makes clear that he derived his RFC finding from the medical opinion evidence, appropriately weighed the conflicting opinion evidence, and explained that he rejected Dr. Bacchus' opinion because it was issued after the date

last insured and not corroborated by medical evidence from before the date last insured. Plaintiff ignores the ALJ's actual analysis in her complaints against the ALJ's decision-making. As substantial evidence supports the ALJ's RFC finding, this finding will be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby AFFIRMED.

Entered: October 5, 2015.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court